NORTHERN v. BARNES and STATE v. WILLIAMS.

PRACTICE IN SUPREME COURT. *Sale of land.* The act of the Legislature, approved March 26, 1819, providing for a more speedy means of executing the sale of land after the affirmance of the decree below, and a remand of the case by the Supreme Court, requiring the clerk of the inferior court to execute the order of sale, etc., is held to be unconstitutional and void.

---

MOTIONS.

---

SAMUEL P. WALKER and HOWELL E. JACKSON for motions.

WILLIAM M. RANDOLPH and H. CLAY KING against motions.

L. D. McKISICK, Special J., delivered the opinion of the court.

On the 26th of March, 1879, the Governor approved an act passed by the General Assembly on the 24th, entitled "An act directory as to the sale of lands decreed to be sold by any of the inferior courts in Tennessee, wherein the causes have (been) appealed to the Supreme Court of the State, and the decree for sale confirmed."

The first section of the act provides, "That in all cases where land is decreed for sale by any of the inferior courts of the State, and such cases are appealed to the Supreme Court, and the decision of the inferior court affirmed, the case shall be sent back to

Northern *v.* Barnes and State *v.* Williams.

the inferior court, and the clerk of said inferior court shall be ordered by the Supreme Court to execute the order of sale, and report at the next term of such inferior court, and it shall be the duty of the clerk or commissioner of said inferior court to pay over to the clerk of the Supreme Court all costs accruing in such case in said Supreme Court."

The second section provides, "That it shall be the duty of the clerk within thirty days after the adjournment of the term at which the decree of sale is affirmed, to forward to the clerk of the inferior court from which the appeal was taken, a certified copy of the order of sale, together with all other orders and decrees rendered or made by the Supreme Court in said causes, accompanied by his certificate and seal of office, as to the correctness of the same, which said order or orders and decrees, when received by the clerk of the inferior court, shall be filed with the original papers in the cause in said inferior court, the clerk marking upon them the dates when filed, and at the next or any succeeding term of the court thereof, the Judge or Chancellor holding the same may in his discretion order said order or orders and decrees, with all the endorsements thereon, to be perpetuated in said court by spreading them in full on the . minutes of said superior (inferior) court."

The third section provides, that the act shall take effect from and after its passage, the public welfare requiring it.

Land having been decreed to be sold by the inferior court, in the cases under consideration, and the

decrees appealed to this court and affirmed at the present term, the parties interested in the execution of the decrees ask this court to allow them to enter decrees here, directing the clerk of this court to sell the lands described in the decrees in the respective causes; this application is resisted, and the court is asked to send the cases back to the inferior courts, under the provisions of the above recited act.

Prior to the passage of the act in question, it was the ordinary course and practice of this court, in its discretion, either to remand the cause to the inferior court to be proceeded in, in conformity with the opinion and decree of this court, or to execute the decree of affirmance through the clerk of this court.

Counsel for complainants argue, that the act violates the Constitution of the State, because it encroaches upon the rightful jurisdiction of this court in directing it to enter its judgment in conformity to the will of the Legislature, and because it attempts to confer jurisdiction upon this court over the clerks of inferior courts, which is original in its nature, and which this court does not possess, and which it could not exercise, unless the act confers it.

On the other hand, it is argued that the act is a mere practice act, regulating the mode of proceeding in this court, and that it neither encroaches upon its rightful appellate jurisdiction, nor confers any new or original jurisdiction upon this court.

By the first section of the sixth article of the Constitution, "The judicial power of the State shall be vested in one Supreme Court, and in such Circuit,

Chancery and other inferior courts as the Legislature shall, from time to time, ordain and establish, in the judges thereof, and in justices of the peace." And by the second section of the same article it is ordained that, " The jurisdiction of this court shall be appellate only, under such restrictions and regulations as may, from time to time, be prescribed by law, but it may possess such other jurisdiction as is now conferred by law on the present Supreme Court."

By the third section, " The Legislature shall have power to prescribe such rules as may be necessary to carry out the provisions of section 2d of this article."

By the thirteenth section of the sixth article, Judges of the Supreme Court shall appoint their clerks, who shall hold their offices for six years—Chancellors shall appoint their clerks and masters, who shall hold their offices for six years—Clerks of the inferior courts, holden in the respective counties or districts, shall be elected by the qualified voters thereof, for the term of four years.

When the Constitution of 1870 was adopted, the extent of the jurisdiction of this court had been defined by a number of acts of the Legislature, which had been carried into the Code of 1858, and was to be found in sections 4495 to 4502 inclusive—and the practice in this court had been prescribed and regulated by various acts carried into the Code at sections 4504 to 4516 inclusive, and in various sections to be found in the chapter entitled proceedings for the correction of errors. Whatever jurisdiction, if any, those sections conferred upon the Supreme Court as it ex-

isted when the Constitution of 1870 was adopted, this court is expressly authorized to exercise under the latter clause of the second section of article VI.

But it is conceded that that section does not authorize the Legislature to confer any new original jurisdiction upon this court. It can only prescribe restrictions and regulations for the exercise of its appellate jurisdiction; and the question is, whether the act under consideration merely prescribes a mode for the exercise of that appellate jurisdiction in the class of cases to which it applies, or whether it goes further and attempts to enlarge or abridge that jurisdiction.

In support of the validity of the act it is argued, that its real meaning is a simple direction to the Supreme Court to remand the cause to the inferior court, instructing the clerk of that court to proceed at once to execute the decree of the inferior court, without waiting until that court convenes, and acts upon the mandate of the Supreme Court, and that the real purpose of the act is to expedite the execution of the decree; that when the sale shall be made by the clerk of the inferior court, and reported to the court, the cause is then to be proceeded in, as if there had been no appeal. While the language of the first section, though peculiar in using the phrase, " the case shall be sent back to the inferior court," instead of the familiar and technical word *remanded*, if that section comprised the entire act, and contained alone this direction, it would be difficult to escape the construction contended for. But looking to the entire enactment, it will be found that the case is really to be sent

back to the clerk, and not to the court, the clerk of this court being directed in the second section to send certified copies of the orders and decrees of this court to the clerk of the inferior court, who is directed to file those orders and decrees with the original papers in the cause, without requiring him to enter them upon the rule docket of the court, or in any way to bring them to the attention of the judge of the court, and whether they shall be perpetuated by spreading them upon the minutes of the court, is left to the discretion of the judge.

And here it may be observed, that although the word *"superior"* is used both in the printed act and in the exemplified copy furnished us from the office of the Secretary of State, in the last clause of the second section, it is clearly a clerical error, and printed and written by mistake for the word *inferior*.

In arriving at the intention of the Legislature, and the meaning of its acts, we construe the whole act together, just as we do in construing deeds, wills or other written instruments, and governed by that familiar and accepted rule, it appears to be plainly the intention and meaning of this act, to direct this court to order the clerk of the inferior court to execute a decree of this court, and not the decree of the court of which he is clerk. Manifestly this court has no jurisdiction to do anything of the kind. As we have seen by the express provisions of the Constitution, the office of clerk of the various courts is created by the Constitution, each court has its own clerk, and has jurisdiction over that clerk; but we have no provis-

ion in the Constitution, nor in the statute law, which gives jurisdiction to any court over the clerk of another court.   Such a law would be an anomaly, calculated to lead to inextricable confusion in the administration of justice.

While this court has no jurisdiction over the clerks of inferior courts, simply as clerks, it has jurisdiction over the inferior courts and the judges thereof, in all cases wherein it has appellate jurisdiction of the parties, and of the subject matter, and can compel the inferior court or the judge thereof to obey its mandates.

It will now be shown, that it appears to be plainly the intention and meaning of the act in question, to direct this court to order the clerks of inferior courts to execute the decrees of this court, and not the decrees of the courts of which they are clerks.

Under our system, Chancery, Circuit and County Courts have jurisdiction to decree the sale of land for various purposes; this jurisdiction in the circuit and county courts is purely statutory, and whenever and as often as it has been conferred, the statutes direct, that such proceedings shall be conducted as chancery causes, and such is the uniform practice.

In chancery causes the pleadings, exhibits, depositions, orders and decrees in the cause, constitute the record, and the cause is heard by the Chancellor upon the whole record, and the facts and law determined by him, except in cases where one or both of the parties ask for a jury.

By section 3155 of the Code, it is provided, "that either party dissatisfied with the judgment or decree

39—VOL. 2.

of the circuit or chancery court in a *matter* of equity, tried according to the forms of the chancery court, may appeal to the Supreme Court, and have a re-examination in that court of the whole matter of law and fact, appearing in the record." This section was brought into the Code from the act of 1831, ch. 49, sec. 1.

An appeal from a decree in an equity cause absolutely vacates the decree of the inferior court; the trial of such causes in this court is a trial *de novo*, and a re-examination of the whole matter of law and fact appearing in the record. *Smith* v. *Holmes*, 12 Heis., 466.

Whenever the appeal is prayed and granted, and the terms complied with, the inferior court loses all jurisdiction of the cause; the whole case is transferred into this court, and nothing remains in the inferior court. This court proceeds to hear and determine the cause, and makes its own decree; and while, in the opinion of the court, the decree of the inferior court may be correct, and the technical word "*affirmed*," frequently used in such cases, the parties have the right, and frequently exercise it, of preparing a decree *de novo* to be spread upon the minutes of this court, and that, whether the decree is to be executed here or the cause remanded.

The judgment of this court frequently is, that the decree of the Chancellor, settling the rights of the parties and ordering a sale of the land, is right, and as to those matters affirmed, but reversed simply as to the terms of the sale; in some cases wherein the chancery court had ordered the land to be sold on a

credit, barring the equity of redemption, this court modifies the decree of the court below, and directs a sale for cash—in some cases this court changes the time of the credits—in other words this court renders such decree as in its judgment will best subserve the rights and interests of the parties, without regard to the decree below, but just such decree as, upon a reexamination of the questions of law and fact appearing in the record, in its opinion, the court below should have rendered.

If then it is the decree of this court which is to be executed, and not the decree of the inferior court, it would seem that no authority need be cited to show that the Legislature has no constitutional power to prescribe or regulate the decrees of this court, however desirous it may be to expedite the administration of justice. But there is one late and pertinent decision of this court bearing upon the question, to which reference will now be made. This court was authorized under the schedule to the Constitution, providing that at first and for a limited time, the court should consist of six judges; it so happened, while the court was thus constituted that the judges in some cases were equally divided in their opinion. Neither the Constitution nor any statute in force when it was adopted, having provided for such cases, the judges gave no judgment, and the causes were hung up in this court. In order to provide a remedy, and intending in perfect good faith to expedite the administration of justice in this court, the Legislature, on the 6th of March, 1875, passed an act providing " that in

all cases now pending in the Supreme Court, or hereafter brought thereto, in which the judges shall be equally divided, the judgment shall be determined as follows: If the case depend upon the constitutionality of any act of the General Assembly, then such judgment or decree shall be in favor of the validity of such act. In all other cases the judgment or decree of the court below shall be *affirmed.*"

This law being upon the statute book, and cases pending in this court to which it applied, the judges in the first instance, without special consideration or argument, but in obedience to a sentiment of respect, which they have always had, and doubtless always will entertain for the co-ordinate legislative tribunal, entered their judgment in accordance with the provisions of the act. But after argument, and upon full consideration the judgment was set aside, and held not to be the judgment of the court. *Perkins* v. *Scales*, Legal Reporter, May, 1877. The reasoning of Judge Freeman in that case, was largely supported by the opinion of the late Chief Justice in the case of *Mabry* v. *Baxter*, the court in that case having under consideration the constitutionality of an act directing the circuit court to grant severances and change the venue in certain cases—in which the judgment, and the exact judgment to be given was prescribed by the Legislature.

Both of these acts having been held by this court to be unconstitutional, upon the ground that they commanded the court to give certain judgments in certain classes of cases, it is difficult to perceive the difference between these two acts and the one under consideration.

The act of March 6th, 1875, was intended to settle the rights of the parties; but the act under consideration in the case of *Baxter* v. *Mabry*, was an act regulating the practice in the circuit court, in certain cases. But because it required the court to enter a certain prescribed judgment, it was held unconstitutional, for the reason that it directed the judge to substitute the will of the Legislature for the judgment of the court.

The foregoing decisions do not in any way question the power of the Legislature to prescribe such rules as may be necessary to carry out the provisions of section 2 of article 6 of the Constitution. That the Legislature has the power to prescribe such rules as may be necessary to enable this court to exercise its appellate jurisdiction is not questioned, but after that jurisdiction has once rightfully attached, under such rules as may be prescribed by law, this court as a co-ordinate branch of the State government, under the Constitution, has power to make and enforce its decrees without any directions from the Legislature.

The conclusion is, that notwithstanding the act of March 26th, 1879, this court may, in its discretion, allow the decrees submitted by the complainants to be entered, the parties interested so desiring, and there being no special cause shown for remanding the causes, the motions are allowed, and the decrees will be entered accordingly.

COOPER, J., delivered the following dissenting opinion:

I dissent from the opinion of the majority of the

