FOX et al. v. RIVER HEIGHTS, Inc., et al.—118 S. W. (2d) 1104.

Eastern Section. January 15, 1938.

Petition for Certiorari denied by Supreme Court, July 2, 1938.

Cates, Smith & Long and Fowler & Fowler, all of Knoxville, for appellants.

Frantz, McConnell & Seymour, of Knoxville, for appellees.

SENTER, J. This is an appeal from certain orders and decrees entered in the cause by the Chancellor subsequent to a remand of the cause by this court, where the cause was retained in the Chancery Court of Knox County, Tennessee for further proceedings under the procedendo from this court by the Eastern Section.

By the original bill a foreclosure of a trust deed executed on the property now referred to as the Andrew Johnson Hotel Property in the city of Knoxville, Tennessee, which trust deed secured a certain indebtedness in the sum of $800,000 payable in installments, represented by a note. The trust deed contained certain provisions authorizing the trustee named therein to foreclose the trust deed for the collection of installments in arrears or where defaults in the payment of past due installments, including interest and taxes etc., had been made; the sale to be made subject to the continuing lien to secure installments not then due.

The pleadings in the cause were voluminous and set out with much detail the claims and contentions of the respective parties to the cause, and involved the litigation of numerous questions, especially with respect to priority of rights, as well as the personal property consisting of the hotel furnishings which were sold under

a conditional sales contract. Numerous questions and matters were made the subject of the litigation, and involved the determination of all the rights and claims of the parties litigant.

There was a very full and comprehensive decree by the Chancellor fixing the rights and priorities of the parties and sustaining the orignial bill, and also decreeing a sale of both the real estate involved and the hotel furnishings etc. The sale of the real estate under the decree was to satisfy the judgment recovered for the installments then in default at the time of the decree, but the sale was specifically made subject to the continuing lien for the unpaid and immature installments as provided in the trust deed. The decree of the Chancellor specifically retained the cause in the Chancery Court for further orders and decrees with respect to future defaulting installments. There was a receiver in the Chancery Court, and the decree directed the receiver to continue the operation of the hotel as a going concern under the orders of the court and to make his reports to the Chancery Court touching the operation of the hotel by the receiver.

From that decree there was an appeal to the Eastern Section of this court resulting in an affirmance by this court of the decree of the Chancellor in all material matters and adjudicating and fixing the rights of the parties to the cause with but a slight modification to the Chancellor's decree by this court for a sale of the property by the clerk of Eastern Section of the Court of Appeals at Knoxville, for the amount of the indebtedness past due and found to be in default at the time of the decree. The decree of this court provided that the sale of the hotel property be made subject to the continuing lien. We do not deem it necessary or material to go into a further history of the litigation prior to the entering of the decree in the cause by this court of April 13, 1935.[1]

There was a petition to the Supreme Court for writ of certiorari to review the opinion and decree of this court of April 13, 1935. The petition for the writ of certiorari was denied by the Supreme Court and a memoranda per curiam opinion filed by that court on January 13, 1936. There was also a petition to rehear filed in the Supreme Court and a per curiam opinion by that court, making certain clarifying modifications of one of the questions raised by the petition to rehear.

It was found from the receiver's report made to the Chancellor that there was then sufficient funds in the hands of the receiver, resulting from the operation of the hotel with which to fully pay off and satisfy the judgment decreed by this court in the decree of April 13, 1935, rendering the sale of the property unnecessary, and the receiver was directed to pay over said funds to the clerk and

[1]No opinions for publication.

master of the Chancery Court of Knox County and the clerk and master was ordered to pay a sufficient amount of same to the clerk of this court at Knoxville to satisfy said judgment, and hence no sale could result.

Subsequently there were two appeals from interlocutory decrees entered in the cause by the Chancellor, and disposed of by the members of the Eastern Section of this court by written opinions and decrees.

The cause was remanded to the Chancery Court of Knox County for further proceedings touching matters reserved by that court. The Eastern Section of this court holding in effect, that since the receivership was under the direction and control of the Chancery Court of Knox County, and that the reports of the receiver would be made to that court, and the funds in the hands of the receiver would be applied to future defaulting installments under future sales for which the cause was retained in the Chancery Court, that irrespective of the jurisdiction of the Court of Appeals to order sales for future defaults, that it was expedient and would serve the ends of convenience that the cause should be remanded to the Chancery Court to be further proceeded with if occasion arose for a sale of the property for further defaults in the payment of installments, and a direction was made to the clerk of this court at Knoxville to include in the procedendo to the Chancery Court the former decrees of the appellate courts for the guidance of the Chancellor in future proceedings. After the return of the procedendo to the Chancery Court of Knox County and on motion of the complainant, Frank Fox, trustee, to the effect that the procedendo be taken up by the Chancellor, there was a decree entered in the cause on April 19, 1937 wherein it is recited in substance as follows: That since the decree of October 10, 1933 and up to April 1, 1937, installments of principal, interest and attorney's fees in the sum of $334,381.19 had become due, in arrears and in default under the terms of the note dated February 1, 1928, executed by River Heights, Inc., to The Prudence Company, Inc. for $800,000 and trust deed securing same, which amount of $334,381.19, complainant, Manufacturer's Trust Co., trustee, is entitled to recover and it was decreed that Manufacturer's Trust Co., trustee, have and recover said sum of $334,381.19 from the defendant, River Heights, Inc., together with the costs of the sale and foreclosure as provided in the decree. The decree further recited:

"It appearing to the court that the Receiver has filed a report in this cause from which it appears that on March 31, 1937 there was in his hands as receiver, the sum of $68,393.73, being surplus funds in the hands of the Receiver over and above the costs of operating the hotel and the payment of municipal, state and county taxes assessed against the real estate and/or the personal prop-

erty situated therein, and that under the terms of the trust deed of February 1, 1928 securing said $800,000.00 note and under the terms of the decree of this court entered April 2, 1934, recorded in Minute Book 109 page 35, Manufacturer's Trust Co., Trustee, is entitled to have said surplus funds in the hands of the Receiver credited against the above amount and any amount the Manufacturers Trust Co., Trustee, under said trust deed securing said $800,000.00 note.''

It was further decreed that the said sum of $334,381.19, the amount decreed to the Manufacturers Trust Co., trustee, be credited with said sum of $68,393.73 of surplus funds in the hands of the receiver, and it was further decreed that the Manufacturers Trust Co., trustee, have and recover the difference or the sum of $265,987.46 and all costs of sale and foreclosure, and that all the property covered by said trust deed on February 1, 1928 be sold to satisfy such amount, but subject to the rights of Ruth S. Burlin, Inc., representing certain of the furniture contained in the hotel and subject to the continuing lien of said trust deed for the unpaid balance.

It was further decreed that the sale of the property be subject to any defaults occurring after April 1, 1937 and before the date of the sale, and subject to the unpaid balance of said note and trust deed and the continuing lien of the trust deed securing same, and the order of sale to so provide.

There followed a decree of sale of all the property described in the decree, said sale to be made by the clerk and master of the Chancery Court of Knox County. The cause was specifically retained on the docket for the purpose and all purposes necessary for the enforcement of the continuing lien of said trust deed of February 1, 1928.

River Heights, Inc., Globe Indemnity Company, and A. Duncan Reid, trustee, excepted to the decree, and from the decree prayed an appeal to the Eastern Section of this court, which prayer the Chancellor, in the exercise of his discretion, and because the foregoing decree was not a final decree, denied the appeal. To the action of the court in denying their said appeal at that time River Heights, Inc., Globe Indemnity Company, and A. Duncan Reid, trustee, excepted.

Upon the coming in of the clerk and master's report of sale, there was a decree of confirmation by the Chancellor on July 12, 1937. At the said sale so confirmed by said decree of July 12, 1937, the property was sold for the sum of $50,000, subject to the continuing lien as previously decreed and title thereto was vested by the decree in the purchaser. The decree recited in part as follows:

''This cause came on to be heard before the Honorable A. E. Mitchell, Chancellor, upon the entire record in this cause, including

the decree of sale and the Master's report made in obedience thereto, which report is as follows: . . . And said report being unexcepted to, is by the court, on motion of the complainant, in all things confirmed . . ."

The cause was specifically retained on the docket for the purpose of enforcing the continuing lien of the trust deed of February 1, 1928 for subsequent defaults and for determining any questions arising in connection with the claim of Ruth S. Burlin, Inc. It was further provided that any appeal of this cause should not vacate or impair the jurisdiction of the Chancery Court of Knox County in the exercise of the functions for which the cause was retained.

On July 23, 1937 there was another order or decree which recites:

"In this cause it appearing to the court that in decree entered herein on April 19, 1937 (Minute Book 116, page 175) complainant, Manufacturers Trust Co., Trustee, was awarded judgment against River Heights, Inc., for the sum of $265,987.46, and the property described in said decree was ordered sold to satisfy said judgment, subject to the continuing lien of the trust deed of February 1, 1928, from River Heights, Inc. to Frank Fox, Trustee, et al., securing the unpaid balance of the $800,000.00 note secured by said trust deed, and it further appearing to the court that said property was sold on June 29, 1937, to satisfy said judgment and by decree entered herein on July 12, 1937, in Minute Book 17, page 26, said sale was confirmed and that in said decree no execution was awarded for the collection of the unpaid balance of the said judgment, it is now ordered, adjudged, and decreed that execution issue therefor."

There was a stipulation signed by the solicitors of the respective parties to the cause to the effect that in the event of an appeal that the first seven volumes of the record previously filed in the Court of Appeals could be looked to and considered by the Court of Appeals but need not be included in a new transcript and it would not be necessary for the clerk and master to again certify the record as already filed in the Court of Appeals, and the stipulation recited that it was made for the purpose of abridging the record for purposes of appeal and any writ of error, and to avoid duplication of the cause. Hence only Volume 8, which covers all the proceedings in the Chancery Court since the last remand by the Court of Appeals, was certified by the clerk and master to this court.

On July 29, 1937 the cause was again before the Chancellor on the prayer for an appeal by defendants, River Heights, Inc., Globe Indemnity Company, and A. Duncan Reid, trustee. Since the prayer for the appeal and the decree thereon contained therein is made the subject of some controversy between the parties in this

court, we deem it important to set the same out and the decree thereon in full, and which is as follows:

"This day came River Heights, Inc., Globe Indemnity Company, and A. Duncan Reid, Trustee, and excepted to the decree entered by this court in this cause on July 12, 1937 in Minute Book 117, page 26, and to the decree entered on July 23, 1937, awarding an execution, and prayed an appeal from said decree to the next term of the Court of Appeals of Tennessee, sitting at Knoxville, Tennessee, which appeal is hereby granted by the Court upon condition that the said River Heights, Inc., Globe Indemnity Company, and A. Duncan Reid, Trustee, file, within thirty days from the entry of this decree, with the Clerk and Master, a good and sufficient appeal bond in the penalty of $2500.00, conditioned that in the event said appeal be not successfully prosecuted to pay the costs of the cause in this Court and in the Court of Appeals which may not have been adjudicated prior to the aforesaid decree of July 12, 1937."

On August 18, 1937 these appellants filed certain exceptions to the decree of July 23, 1937 which ordered and decreed that execution issue for the collection of the unpaid balance of the judgment for the sum of $265,987.46 rendered in favor of Manufacturers Trust Co., trustee, against River Heights, Inc., by decree entered April 19, 1937. The grounds of the exceptions being as follows:

"Exception is made to the foregoing order of July 23, 1937 (Minute Book 117, page 81) on the following grounds:

"(1) Because the original note for $800,000.00 executed by River Heights, Inc. to the Prudence Company, Inc., dated February 1, 1928, and the trust deed from River Heights, Inc. to Frank Fox, Trustee, executed February 1, 1928 to secure the payment of said note upon which the aforesaid judgment was based, provide that they 'shall be construed as made with reference to and shall be governed by the laws of the State of New York.'

"(2) Because the laws of New York passed prior to the entry of the decree of April 19, 1937 and the order of July 23, 1937 and in full force and effect when said decree and said order were entered provide that the proceeds of the sale of property made to foreclose the lien of a mortgage or trust deed thereon, regardless of the amount of said proceeds, shall be deemed to be in full satisfaction of the mortgage debt, and no right to recover any deficiency in any action or proceeding shall exist unless a motion for a deficiency judgment shall have been made as prescribed by Chapter 794 of the laws of the State of New York for the year 1933, and Chapter 705 of the laws of the state of New York for the year 1937. And when such motion is made the Court shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in

at auction, or such next earlier date as there shall have been any market value thereof, and shall make an order directing the entry of a deficiency judgment. And such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus the costs and disbursements of the action, less the market value as determined by the Court or the sale price of the property, whichever shall be the higher.

"(3) Because no motion for a deficiency judgment has been made in this cause; no determination of the fair and reasonable market value of the mortgaged premises has been made by the Court, and no deficiency judgment has been entered by the Court as is required by Chapter 794 of the laws of the State of New York for the year 1933 and Chapter 705 of the laws of the State of New York for the year 1937.

"In support of the foregoing exceptions there is attached hereto, and filed as a part hereof, a certified copy of the following laws passed by the State of New York, to wit: Chapter 794 for the year 1933, Chapter 277 for the year 1934, Chapter 83 for the year 1937, and Chapter 705 for the year 1937."

What purports to be the laws and statutes of the State of New York referred to were attached to the excepions above quoted, with certain certifications made by the Deputy Secretary of State of the State of New York, under the seal of the Department of State, of the State of New York.

On August 18, 1937 there appears a motion by these same appellants to set aside and vacate the order or decree entered in the cause on July 23, 1937, being the same order or decree referred to in the exceptions above quoted, and this motion to set aside and vacate said decree is based upon the same grounds as set forth in the exceptions above quoted.

On August 20, 1937 there was a motion filed in the cause by the Manufacturers Trust Co., trustee, et al. to strike the motion of the Globe Indemnity Co., et al., filed August 18, 1937 seeking to vacate the order entered July 23, 1937. The grounds of the motion are numbered from one to seventeen. These several grounds of the motion to strike and the action of the court thereon will be later referred to in this opinion.

On August 23, 1937 the cause was heard by the Honorable L. H. Carlock, Judge of the Second Circuit Court of Knox County, Tennessee, sitting by interchange with the regular Chancellor of the Knox County Chancery Court. The cause was heard on the motion of River Heights, Inc., et al., to set aside and vacate the order or decree entered in the cause on July 23, 1937, awarding an execution for the unpaid balance of the judgment of $265,987.46, de-

creeing a judgment for said sum in favor of Manufacturers Trust Co., trustee, by decree of April 19, 1937; and also upon the motion of the Manufacturers Trust Co., trustee, et al., to strike the aforesaid motion of River Heights, Inc. et al.

At this hearing of the cause there was a decree which is in part as follows:

"And the court having heard read said motions, and having also heard read the aforesaid documents purporting to be the above designated Chapter of the laws of New York offered by River Heights, Inc., et al., in support of their motion to set aside and vacate the decree of this court entered July 23, 1937, and the court also having heard argument of counsel in support of and opposing said respective motions and understanding the same, is of the opinion and doth accordingly adjudge and decree:

"(1) That the documents filed in this cause by River Heights, Inc., et al., and tendered as evidence of the laws of New York purporting to amend the Civil Practice Act of New York, are not proven in accordance with the Acts of Congress or with the Statutes of Tennessee so as to entitle them to be admitted in evidence;

"(2) That the purported amendments to the Civil Practice Act of the State of New York show on their face that they constitute only a part and not the whole of the said Civil Practice Act of New York, and for this reason they are not admissible in evidence;

"(3) That the alleged amendments to the Civil Practice Act of New York purport only to prescribe the procedure by which certain remedies may be obtained, and being procedural in character they are not applicable to mortgaged property located in the State of Tennessee;

"(4) That the provision of the deed of trust stating that it is expressly made with reference to the laws of the State of New York and shall be governed by and construed as made under the laws of the State of New York with reference to the rate of interest or to the consideration which may be reserved or paid under an agreement in writing between corporations for the use and loan of money, was made with reference to and is only applicable to those specific matters which pertain to the rate of interest or other consideration provided for in the note secured by said trust deed: and

"(5) That the aforesaid motions present only questions of law, and since no question of fact is presented to the Court by said motions, the alleged laws of New York filed and tendered by river Heights, Inc., et al., as evidence are irrelevant, and for that reason are excluded as evidence. That they are also not admissible otherwise or effective for the purpose for which they are offered to vacate or modify the decree of this court heretofore made and entered and attacked by said motions or exceptions.

"For the foregoing reasons it is therefore ordered and decreed

by the Court that the motion of River Heights, Inc., et al., to vacate and set aside the decree of this Court entered July 23, 1937 in Minute Book 117, page 81, be and the same is hereby dismissed; that the motion of Manufacturers Trust Company, Trustee, to strike the said motion of River Heights, Inc., et al., be and the same is hereby sustained; and that the motion of Manufacturers Trust Company, Trustee, to strike the exceptions filed on August 18, 1937 by River Heights, Inc., et al., to the decree of this Court entered July 23, 1937 in Minute Book 117, page 81, and to strike the four documents filed therewith as a part thereof purporting to be laws of the State of New York, be and the same is hereby denied and dismissed, but said exceptions to said decree are overruled and disallowed.

"From all of the aforesaid decree, except so much thereof as denies and dismisses the motion of Manufacturers Trust Company, Trustee, to strike the exceptions of River Heights, Inc., et al., to the decree of July 23, 1937 in Minute Book 117, page 81, and the four documents filed therewith and as a part thereof purporting to be laws of the State of New York, the said River Heights, Inc., Globe Indemnity Company, and A. Duncan Reid, Trustee, excepted and do now except, and pray an appeal to the next term of the Court of Appeals sitting at Knoxville, Tennessee, which appeal is hereby granted by the Court, upon condition that the said Appellants perfect the appeal heretofore granted them by order entered in this cause July 29, 1937 in Minute Book 117, page 109, by filing the appeal bond of $2500.00 therein specified within the time fixed by said order, to wit, on or before August 28, 1937. . . ."

The appeal has been perfected as granted. The assignments of error by appellants are as follows:

"First: The Court erred in adjudging by decree entered April 19, 1937 that since October 10, 1933, and to April 1, 1937 installments of principal, interest and attorney's fees in the sum of $334,381.19 have become due, in arrears and in default under the terms of the note dated February 1, 1928, executed by River Heights, Inc. to The Prudence Company, Inc. for $800,000.00 and the trust deed securing the same, and that Manufacturers Trust Company, Trustee, have and recover said sum of $334,381.19 from the defendant River Heights, Inc. together with all of the costs of sale and foreclosure."

Under this assignment of error the contention is made that this was error because the purposes for which the original bill had been filed in this cause to recover judgment for the amount of the principal and interest which was in default on October 10, 1933, and to have the property sold in partial foreclosure of the trust deed to satisfy said defaults, had been fully satisfied. That after the satisfaction of the judgment rendered for the defaults up to October 10, 1933, no amendment was made to the original bill, and no sup-

plemental bill was filed; that no petition was filed, and no motion was filed and no other pleading was filed in this cause seeking the relief which the Chancellor decreed in favor of Manufacturers Trust Company, trustee, in the decree of April 19, 1937, and that no proof was taken to establish the amount of any defaults which may have existed or to show that Manufacturers Trust Company, trustee was still the owner of the note of February 1, 1928 and the trust deed securing same. It is therefore contended that there was neither pleading nor proof upon which the court could base the judgment awarded Manufacturers Trust Company, trustee, in the decree of April 19, 1937, and ordering a sale of the property to satisfy same, and said decree is therefore coram non judice, void and of no effect.

Under the second assignment of error it is contended that the court erred in adjudging by the decree of April 19, 1937, that the judgment of $334,381.19 in favor of Manufacturers Trust Company, trustee, should be credited only with the sum of $68,393.73 of surplus funds in the hands of the receiver, and that the property described in the first trust deed should be sold to satisfy the balance of $265,987.46. It is contended that this was error because the Court of Appeals in its opinion filed on January 15, 1937, upon which it based its decree of February 20, 1937 remanding the cause to the Chancery Court, contemplated and required that the Chancery Court should have an accounting by its receiver, appointed in this cause, before any sale of the property might be made.

By the third assignment of error the question is presented that the court erred in ordering the Hotel Andrew Johnson property to be sold in partial foreclosure of said deed of trust, that is, in satisfaction of the net judgment of $265,987.46, subject to any defaults occurring after April 1, 1937 and before the date of sale, and subject to the unpaid balance of the $800,000 note dated February 1, 1928 and the trust deed securing the same, and subject to the continuing lien of said trust deed. Under this assignment the contention is made that if there had been proper pleadings and proof to authorize the court to adjudicate the defaults between October 10, 1933 and April 1, 1937, and to order a sale of the property in foreclosure of the mortgage, such sale should have been made in full and final foreclosure of the entire balance of principal, interest and attorney's fees remaining unpaid on the $800,000 note of February 1, 1928. This contention rests upon the theory that the rate of interest provided for in the note and trust deed and the payments and deposits required to be made placed such a burden on any purchaser of the property who is required to buy subject to the continuing lien of the trust deed that such purchasers were naturally precluded from bidding and buying; that the sale of the property in partial foreclosure of the trust deed and under the de-

crees imposed by the Chancellor created a steep or absolute barrier against any bidder bidding successfully against Manufacturers Trust Company, trustee, and enabled said Manufacturers Trust Company, trustee, to purchase said property for the nominal sum of $50,000; that if any sale and foreclosure of the property was authorized, that the sale should have been made in full and final foreclosure of the note for the entire balance of principal, interest, and attorney's fees unpaid on the $800,000 of February 1, 1928, etc.

The first three assignments of error are directed to the decree of April 19, 1937 and not to subsequent decrees. We will first dispose of these first three assignments before considering and disposing of the other assignments of error by these appellants.

The first question presented for consideration on the question made with respect to the decree of April 19, 1937 is, whether there was an appeal prayed and perfected from the decree of April 19, 1937. We have heretofore set out with some detail the respective decrees beginning with the decree of April 19, 1937 and the subsequent decrees entered in the cause, and from which it appears that the appellants excepted to the decree of April 19, 1937 and prayed an appeal therefrom. The Chancellor declined to grant the appeal at that time on theory that it was an interlocutory decree and the granting of the appeal therefrom was discretionary and that he exercised his discretion by denying the appeal from that decree. There were appeals prayed and granted from the decree of July 12, 1937 and July 23, 1937. The final decree by Judge Carlock, sitting by interchange, was also appealed from, and in the order granting the appeal from that decree were stated the conditions upon which the appeal was granted and referred to the appeals prayed and granted from the decrees of July 12, 1937 and July 23, 1937 respectively.

We do not find that the appellants have ever renewed their prayer for an appeal from the decree of April 19, 1937, and so far as the record discloses the matter of the appeal from the decree of April 19, 1937, which appeal was denied at that time was never renewed when the final decrees were subsequently entered. In this situation the question is presented as to whether the appeals granted and perfected constituted a broad appeal bringing up and including the decree of April 19, 1937, so as to have the appeal which has been perfected to be treated as a broad appeal bringing up the entire record for review, or whether it constituted a limited appeal from the decrees of July 12, 1937, July 23, 1937, and August 23, 1937.

It is the contention of appellees that the appeal as granted and perfected was limited to appeals from the decrees of July 12, 1937, July 23, 1937, and August 23, 1937, and, since it appears that ap-

pellants never perfected an appeal from the decree of April 19, 1937, that that decree has now become final and not subject to attack by appellants under the assignments of error pertaining thereto.

Appellants contend, on the other hand, that the appeals as perfected contemplated and included appeals from all the decrees entered in the cause since the remand to the Chancery Court by the Court of Appeals; that it being a broad appeal, it brought up for review the the decree of the Chancellor of April 19, 1937, in which decree judgment was rendered in favor of the complainants for the installments then in default and an order of sale of the property.

In support of this contention on this question appellants cite and rely upon, among other authorities, paragraph 1262 of Gibson's Suits in Chancery wherein it is said:

''The object of an appeal is to enable the party dissatisfied with the Chancellor's rulings, orders, and final decrees, to have the cause reheard and redetermined by an appellate court upon all the matters of law and fact appearing in the record; and where an appeal has been prayed, granted, and perfected, and the term ended or thirty days elapsed the cause is thereupon transferred from the Chancery Court to the Appellate Court and the jurisdiction of the Chancellor is ended. . . .''

''The office of an appeal is to transfer the adjudication of the cause to the appellate court, to the end that the appellants may have a re-examination in that court of the whole matter of law and fact appearing in the record.''

Many cases are cited in support of the above text by the learned writer.

As we understand and construe the cases cited by the author, they are all cases wherein there had been a broad appeal and not a limited appeal.

In Smith v. Holmes, 59 Tenn. 466, 12 Heisk. 466, one of the cases relied upon by appellants, it was said:

''It was said by this court at the April term 1871, at this place, in the case of Pond v. Trigg, that 'It is the settled doctrine of this court that the broad appeal vacates the judgment of the inferior court; while the appeal in error merely suspends the judgment of the inferior court, and does not annul or destroy it. The simple appeal operates as an immediate transfer of the case to the appellate court, puts an end to the further control of the inferior court and operates to annul its judgment, which, in legal contemplation, ceases to exist after the appeal is granted.''

It was further stated by the court in that case:

''A simple appeal from the chancery court to the supreme court

secures a trial de novo in the supreme court, the same as if the suit had originally commenced there.''

In that case it appeared that the court was making a distinction between a simple or broad appeal in the Chancery Court as distinguished from an appeal in error. However, the question there involved was whether a chamber's decree made in pursuance to the statute could be brought to an appellate court for review by filing the record for error or the petition for a writ of error, where there had not been a prayer for an appeal from the chamber's decree.

Appellants also cite and rely upon the case of Northern v. Barnes, 70 Tenn. 603, 2 Lea 603, wherein the court said:

''An appeal from a decree in an equity cause absolutely vacates the decree of the inferior court; the trial of such causes in this court is a trial de novo, and a re-examination of the whole matter of law and fact appearing in the record. Smith v. Holmes, 12 Heisk. 466.

''Wherever the appeal is prayed and granted, and the terms complied with, the inferior court loses all jurisdiction of the cause; the whole case is transferred into this court, and nothing remains in the inferior court. This court proceeds to hear and determine the cause, and makes its own decree; and while, in the opinion of the court, the decree of the inferior court may be correct, and the technical word 'affirmed,' frequently used in such cases, the parties have the right, and frequently exercise it, of preparing a decree de novo to be spread upon the minutes of this court, and that, whether the decree is to be executed here or the cause remanded.''

It will thus be observed that there is nothing in that case which involved the question of a limited appeal as distinguished from a broad or simple appeal, and so far as it appears from the opinion in the case it was a broad appeal from a final decree.

The cases are numerous to the effect that a simple or broad appeal from a final decree in a court of equity brings the whole case before the appellate court for a review, and to be tried de novo. See cases referred to in Vol. I of Michie's Digest, page 76 et seq.

As hereinbefore stated, it is the contention of appellees that the decree of April 19, 1937 stands unappealed from under the prayer for an appeal and the order granting the appeal; that the prayer for an appeal to this court which was granted, only brought up the decrees therein specifically appealed from.

Appellants also rely upon the case of Morris v. Richardson, 11 Hump. 389. There was presented a case where the guardian had sold certain slaves in accordance with a decree of the court. At the next term of the court the minors appeared, by their guardian ad litem, and opposed the confirmation of the sale of said slaves and asked to have it set aside as illegal and unauthorized. Whereupon the court sustained the motion and ordered that the sale be

set aside; directed that the purchasers be discharged from their purchases and that their notes be delivered up to them to be cancelled; and that the purchasers should deliver the slaves by them respectively purchased to the guardian ad litem of the minors, to be held by him subject to the further orders of the court. From this order the regular guardian appealed to the Supreme Court. It was there held:

"This petition being regarded, by our law, as a proceedings in equity, the whole case is opened before us for hearing upon the pleadings and proof just in the same manner as it was before the Circuit Judge. We hear the case on appeal, upon its merits as if no decree had been pronounced in the court below and make such decree as may be deemed proper, upon the whole case. The question, therefore, as to the power of the judge, at a subsequent term, to make a final decree annul, in effect, the interlocutory decrees made in a previous term, is one of no practical consequence, so far as the action of this court is concerned. If the power were even denied, the obstacle presented in the court below, between prejudices does not lie in our way."

It will thus be seen that the case of Morris v. Richardson was an appeal by the regular guardian from the decree of the court setting aside a former decree of sale and restoring the property sold to the guardian ad litem of the minor defendants; that was the final decree in the cause and was a broad appeal, and under the authorities above referred to, brought up for review all the orders and decrees made in the cause. That case, we think, is not analogous to the case now before us.

In the case of Caldwell v. Hodsden's Heirs, 1 Lea 45, 69 Tenn. 45, the court had under consideration an appeal from an order or decree of the court directing the disbursement of funds arising from the sale of property ordered to be sold by the court in a proceeding by the administrator to create assets with which to pay debts. Afterwards a report of assets and liabilities was made, which was confirmed at a special term. In that case the opinion recites that the former decree settled and adjudged the rights of all the parties under the pleadings and proof, and the cause remained in the court for the purpose of carrying the decree into full effect. At the next term it was ordered that the clerk and master proceed to collect and distribute the funds in the cause in accordance with the former orders of the court.

There was an appeal prayed and granted from this last order and the court in disposing of the question as to the extent of the appeal stated:

"It is not, therefore, a decree upon which the Chancellor was authorized to grant an appeal under the Code, sec. 3157, nor a final decree from which the parties would have the right to appeal un-

der sec. 3155. . . . At most, it was an order upon a reservation of further directions, to carry a former order or decree into effect. But the settled law is, that an appeal against an order on further directions will not bring up the decree upon which the order was founded. Beavan's v. Mornington, 8 H. L. Cas. 525. An appeal, this court has said, only annuls or vacates, and, of course, only brings up such orders, judgments, or decrees as, in legal contemplation, are appealed from, leaving all others in full force. . . . The appeal in this case only brings up the order in which it was granted, and as there was error in the matter of costs, it will be reversed in that regard, affirmed in other respects, . . . Gilchrist v. Cannon, 41 Tenn. 581, 1 Cold. 581, 582.''

In a headnote to the case of Gilchrist v. Cannon, 41 Tenn. 581, 1 Cold. 581, 582, it is said:

''An appeal . . . only annuls or vacates such orders, judgments, or decrees, as in legal contemplation are appealed from. . . .''

To the same effect is the case of Patterson et al. v. Arnold, 4 Cold. 364, 44 Tenn. 364.

Appellees also cite and rely upon certain cases from other jurisdictions, including Nebraska Loan & Trust Co. v. Dickerson, 1 Neb. unof. 622, 95 N. W. 774. In that case it was said (page 775):

''. . . It is equally evident that the objections on the ground of defect in the decree of August 25, 1897, cannot be considered. No appeal has been taken from that decree, nor from the overruling of the attempt to set it aside. This is simply an appeal from the confirmation of the sale. Objections to a sale do not bring up for review errors or irregularities in the decree of foreclosure or prior thereto.''

And in Myers v. Carr, 173 Okl. 335, 47 P. (2d) 156, the court said (page 161):

''Furthermore, it is the settled law that the correctness of a foreclosure decree cannot be considered on an appeal from an order of confirmation.''

■ These cases from other jurisdictions appear to sustain the contention of appellees. However, we think it settled in this state, at least, that appeals will only lie from a final decree as a matter of right, appeals from certain interlocutory decrees are in the discretion of the court.

■ The conclusion we reach is that the appeal in the present case is an appeal from the final decree. There was an appeal prayed from the interlocutory decree of sale of April 19, 1937, but the prayer for an appeal was denied at that time. While it is true that the only prayer for an appeal granted was from the decrees of July 12, 1937, and July 23, 1937, and the appeal was granted as prayed for, we are further of the opinion that the decree of July

12, 1937, was to all intents and purposes the final decree in the cause, notwithstanding that on July 23, 1937, there was an order in the cause simply correcting an omission to award an execution by inadvertence. There was also an appeal from the action of the court in the decree of August 23, 1937, but that decree was simply a denial of the motion to vacate and set aside the decrees of July 12, 1937, and July 23, 1937, which motion presented the question that a deficiency judgment could not be rendered, nor an execution issue thereon on the theory that the laws of the State of New York control since the contracts, both the principal note and the trust deed securing the same specifically provided that they were New York contracts.

The action of the court in denying this motion was also excepted to and an appeal prayed and granted therefrom, and the granting of which appeal included the decrees of July 12, 1937, and July 23, 1937. The fact remains, however, that the decree of July 12, 1937, was the final decree in the cause, so far as the rights of the parties were concerned. This being the final decree and an appeal having been prayed and granted from that decree, it was an appeal from the final decree in the sense that it was a broad appeal, bringing up the former orders and decrees for review, and operated to vacate the former orders and decrees now before this court for review on this appeal.

█ It frequently occurs that parties are dissatisfied with certain portions of a final decree, but are satisfied with other matters adjudicated by the decree, and seek to appeal from only such portions of the decree as are adverse. Such an appeal is a limited appeal as distinguished from a broad or simple appeal, and the appeal is therefore limited to the particular portions of the decree appealed from.

█ The second question presented by the first three assignments of error now under consideration is the contention of appellants that under the pleadings and the proof in the cause that the Chancellor was without jurisdiction to enter the decree complained of, and this contention is upon the theory that the original bill as filed only sought to recover a judgment and a foreclosure of the trust deed for the amount due for the defaults made to the date of the original decree, October 10, 1933, which became the final decree in that cause, notwithstanding the cause was retained on the docket for other decrees for future maturing defaults. It being the contention of appellants that it would require an amended and supplemental bill, or other pleadings to bring the matter again before the Chancellor, and that no such supplemental pleadings were filed.

We are of the opinion that this contention can not be sustained. The cause was specifically retained in the Chancery Court of Knox County by decree of that court, and also by the decree of this court

of January 15, 1936, remanding the cause to the Chancery Court, and the holding of the court in that decree that the Chancery Court had full jurisdiction over the cause to make such orders and decrees as necessary for the foreclosure of the trust deed for future defaults in the payment of the installments as provided in the trust deed. To the same effect is the holding of the Supreme Court, wherein the court specifically held in denying the petition for the writ of certiorari from the decree of this court of April 13, 1933. We have hereinbefore set out the substance of these decrees and opinions and deem it unnecessary to make further reference to the decrees and opinions of this court and the Supreme Court in the cause. Suffice it to say that the Eastern Section of this court in the decree of January 15, 1936, remanding the cause to the Chancery Court of Knox County, specifically directed that the former decrees in the cause be included in the procedendo to the Chancery Court of Knox County. Upon the filing of the procedendo there was a motion by complainants that the procedendo be taken up, and whereupon the Chancery Court, without additional pleadings, entered the decree of April 19, 1937. We have carefully considered the arguments made by the appellants on this question, and upon a full consideration, we are of the opinion that the appeal from the decree of sale and the decree of confirmation did not require further pleadings to justify the same.

In reaching this conclusion we are not unmindful of the decree by the Western Section of this court of April 13, 1935, to which reference is specifically made by appellants, that in that decree under the original bill they elected to foreclose the trust deed and sell the property to satisfy the installments which were mature and in default at the time the final decree was entered in the Chancery Court of Knox County. We have fully reviewed these decrees, including the subsequent decrees by the members of the Eastern Section of this court, and the opinions of the Supreme Court denying certiorari and sustaining the petition of appellees for a rehearing on the matters hereinbefore referred to and set out. We find nothing in either of the orders or decrees or the opinions referred to that is in any sense inconsistent with the conclusion here reached on the question here presented.

Nor do we find any merit in the assignments of error presenting the question, that, the decree of sale of April 19, 1937, should have been for a foreclosure of the trust deed for the entire amount remaining unpaid on the $800,000 note. The contention is made by appellants that to foreclose for defaulting installments only and the sale to be subject to the continuing lien was prejudicial to appellants, on the theory that other interested purchasers would be slow to bid on the property subject to the continuing lien. In the first place complainants were acting within the rights specifical-

ly granted in the trust deed to sell the property for the amount in default. In the second place the trust deed specifically provided that the entire amount of the note could be paid at any time that the makers of the indebtedness desired to pay the same, by adding two per cent.

It results that the first three assignments of error are overruled and disallowed.

■ This brings us to a consideration of the remaining assignments of error. By these assignments the question is presented that the laws and statutes of the State of New York would control in the matter of decreeing a deficiency judgment and awarding execution therefor. This question was presented to the acting Chancellor, Judge Carlock, on the motion made to vacate the decree of July 12, 1937, and the decree of July 23, 1937, respectively on the theory that under the laws of the State of New York a deficiency judgment and execution thereon, in order to be valid, would have to be proceeded with according to the laws of the State of New York, since the note and the trust deed were New York contracts and made specific provisions that the laws of the State of New York would govern in the matter of a deficiency judgment and the awarding of an execution thereon. This motion and the exceptions to the said decree were acted upon by Judge Carlock, sitting by interchange with the regular Chancellor, and the exceptions and the motion by these appellants were denied. In support of the motion to vacate the decree referred to therein, what purported to be certain certified statutes of the State of New York were attached and made a part of the motion, as well as a part of the exceptions to the said decree complained of.

The $800,000 note contains therein a provision as follows:

"This note is secured by a certain trust deed dated the 1st day of February, 1928, made by the maker hereof to Frank Fox of the Borough of Brooklyn, City and State of New York, as Trustee, and for a description of the property mortgaged and pledged, the nature and extent of the security, and the rights of the holder hereof, reference is hereby made to said trust deed. The said trust deed and all of the covenants and agreements made by the maker hereof therein are hereby made a part of this note, and reference to such trust deed is hereby made with the same force and effect as if the same was fully incorporated in the body hereof."

It also contained the further provision:

"It is understood and agreed that this note is expressly made with reference to and shall be construed as made with reference to and shall be governed by the laws of the State of New York."

The trust deed provides as follows:

"This deed of trust is expressly made with reference to the laws of the State of New York and shall be governed by and construed

as made under the laws of the state of New York with reference to the rate of interest or other consideration which may be reserved or paid under an agreement in writing between corporations for the use and loan of money.''

We are further of the opinion that the note involved and the trust deed involved must be read and construed together, and that the language of the trust deed limited the application of the New York laws, and as above quoted expresses the intention of the parties with reference to the application of the laws of the State of New York.

 We do not think that the laws referred to, even if complete, and competent as evidence in the present suit, could operate to affect the procedural method of foreclosure of the trust deed where the trust deed covers property within the State of Tennessee. We are further of the opinion that the New York statutes as set forth in the certified copies, even if they were sufficiently proved and sufficiently certified to meet the requirements of the laws of Tennessee on the subject, were ever intended to have application to the foreclosure of trust deeds outside of the State of New York. However this may be, the note and trust deed were both executed on the same date, February 1, 1928, and the trust deed was placed to record in the register's office of Knox County, Tennessee, on February 8, 1928. The rights of the respective parties became fixed as of that date.

The statutes of New York relied upon by appellants as controlling the matter of deficiency judgments in the state and county where the property is to be sold were passed subsequent to the date at which the rights of the parties became fixed, and we are therefore of the opinion that such laws and statutes thereafter passed, with respect to deficiency judgments, would not have extraterritorial application so as to defeat the rights of the parties or to affect the rights of the parties under the contract made prior to the date of the New York enactment. According to the alleged certifications, the particular acts and statutes of the State of New York relied upon by appellants were passed by the State of New York in the years 1933, 1934, and 1937.

There is contained in the record the opinion of the acting Chancellor, Judge Carlock, and his rulings on the motion to vacate the decree referred to and wherein it is said:

''1. That the documents fied in this cause by River Heights, Inc., et al., and tendered as evidence of the laws of New York purporting to amend the Civil Practice Act of New York are not proven in accordance with the acts of Congress or with the statutes of Tennessee so as to entitle them to be admitted in evidence.

''2. That the purported amendments to the Civil Practice Act of the State of New York show on their face that they constitute

only a part and not the whole of the said Civil Practice Act of New York, and for this reason they are not admissible as evidence.

"3. That the alleged amendments to the Civil Practice Act of New York purported only to prescribe the procedure by which certain remedies may be obtained, and being procedural in character, they are not applicable to mortgaged property located in the state of Tennessee.

"4. That the provision of the deed of Trust stating that it is expressly made with reference to the laws of the State of New York and shall be governed by and construed as made under the laws of the State of New York with reference to the rate of interest or to the consideration which may be reserved or paid under, an agreement in writing between corporations for the use and loan of money, was made with reference to and is only applicable to these specific matters which pertain to the rate of interest or other consideration provided for in the note secured by said trust deed.

"5. That the aforesaid motions present only questions of law, and since no question of fact is presented to the court by said motion, the alleged laws of New York filed and tendered by River Heights, Inc., et al., as evidence are irrelevant and for that reason are excluded as evidence, that they are not admissible otherwise or effective for the purpose for which they are offered to vacate or modify the decree of this court heretofore made and entered and attacked by said motion or exceptions."

Appellants on this question rely upon Section 9768 of the 1932 Code of Tennessee which provides in part:

"A copy of a written law, or other public writing of any state or govenment, authenticated by the great seal of such state or government, is also evidence of such law or writing."

Section 9769 of the 1932 Code of Tennessee provides as follows:

"The certificate of the head of any department or bureau of the general government, is a sufficient authentication of any paper or document appertaining or belonging to his office.".

We do not think that Section 9769 applies to the certification of the laws of the state, but only applies to "any paper or document appertaining or belonging to his office." In the present matter it is not a paper or document appertaining to or belonging to the office alleged to have been certified to, but a statute or enactment of the State of New York is here involved.

Appellants rely also on Section 9767 of the 1932 Code of Tennessee, which is as follows:

"Appellate court takes judicial notice.—It shall not be necessary, in a case carried from an inferior to an appellate court, to have the statutes of a state read as evidence in the inferior court, transcribed into the record, except where it is directed to be done by

the inferior court; but the appellate court may take judicial notice of such laws and statutes.''

In reply to this contention appellees direct attention to the fact that the alleged New York laws were never offered in evidence but were exhibited with the motion to vacate the order of July 23, 1937.

It is said in Bagwell v. McTighe, 85 Tenn. 616, 4 S. W. 46, on this subject:

''Had such evidence been offered, and the bill of exceptions made to show it, the law need not (unless by direction of the circuit judge) have been transcribed into the record, but this court might take judicial cognizance of it. Code, section 4554.

''But it is only when so offered in evidence below that this court is required to take such notice of the law of another state, and it will never do so for the purpose of putting the inferior court in error. . . . The inferior court is required to have evidence of what such law is before it, in order to act upon it, and is not allowed to take judicial notice of foreign law.''

This was a case in which the contention was made that the contract was made in another state where an action was barred in ten years, and that the laws of the state in which the contract was made would control rather than the laws of the state where the suit was brought. The law of the state where the contract was made was not introduced as evidence.

Here we have the alleged statutes of the State of New York, and alleged to have been certified as the laws of this state required, presented to the court in support of the motion made to vacate the decree referred to. We think it would be highly technical to say that these alleged laws of the State of New York were not properly brought to the attention of the acting Chancellor. However, we think this becomes immaterial in the view we have taken. We concur in the statement contained in the opinion of the acting Chancellor to the effect that the laws of the State of New York relied upon were not proved in the way and manner that the laws of this state require in order to make the evidence competent. These particular laws of the State of New York relied upon purport to be amendatory acts to the Civil Practice Act, by adding two new sections.

By Chapter 794 of the Laws of 1933, Ex. Sess., amending the Civil Practice Act, Section 1083-a it is said:

''No judgment shall be granted for any residue of the debt remaining unsatisfied as prescribed by the preceding section where the mortgaged property shall be sold during the emergency, except as herein provided.''

Chapter 277 of the Laws of 1934 of the State of New York merely extends the period of emergency, and hence has no special bear-

ing. Chapter 705, Laws 1937, amending Section 1083-a of the Civil Practice Act, reads as follows:

"No judgment shall be granted for any residue of the debt remaining unsatisfied as prescribed by the preceding section where an action to foreclose the mortgage has been or shall be commenced during the emergency or where the mortgaged property shall be sold during the emergency, except as herein provided."

The preceding section referred to as 1083 is not shown. Hence the purported laws of the State of New York invoked are not made to appear as the full laws of New York on the subject.

■ However, we are further of the opinion that the acting Chancellor correctly ruled that the certifications of the purported statutes of New York, were not in accord with the statutes in this state admitting the proof of such laws. In the first place, by Section 9768 of the Tennessee Code it is provided that a copy of any written law or other public writing of any state or government which shall be authenticated by the great seal of said state or government is also evidence of such law or writing.

By section 9769 the certificate of the head of any department or bureau is sufficient authentication of any paper or document pertaining or belonging to his office. The certificate attached to the purported laws of the State of New York and attached to the motion was not made under the great seal of the State of New York, but merely under the department seal of the Department of Secretary of State. This was not a compliance with the Tennessee statutes. It was certified to by the Deputy Secretary of State and not by the Secretary of State. For all these reasons we are of the opinion that the learned acting Chancellor correctly excluded the purported laws of the State of New York.

■ We are further of the opinion that even if it appeared that the laws of the State of New York were properly proved so as to make the same admissible, the note and the trust deed, when considered together, and as constituting the contract between the parties, would not warrant the construction that appellants placed upon said New York statutes so invoked. The trust deed makes reference to the fact that the note and the trust deed are made subject to the laws of the State of New York with respect to the rate of interest and the matter of consideration, and does not purport to make the note subject to any other laws or statutes that the State of New York may thereafter pass. The note and trust deed involved were executed on February 1, 1928, and the trust deed recorded in Knox County, Tennessee, on February 8, 1928. This was prior to the time the New York statutes now relied upon were enacted and could not have been in contemplation of the contracting parties at the time the note and trust deed here involved were executed.

190

The note provides as follows:

"This note is secured by a certain trust deed dated the 1st day of February, 1928, made by the makers hereof to Frank Fox of the Borough of Brooklyn, City and State of New York, as Trustee. . . . The said trust deed and all the covenants and agreements made by the maker hereof therein are hereby made a part of this note and reference to said trust deed is hereby made with the same force and effect as if the same was fully incorporated in the body hereof."

Then follows the following provision in the Note.

"It is understood and agreed that this note is expressly made with reference to and shall be construed as made with reference to and governed by the laws of the State of New York."

The trust deed referred to, by paragraph 26 contains the following provision:

"This deed of trust is expressly made with reference to the laws of the State of New York and shall be governed and construed as made under the laws of the State of New York with reference to the rate of interest or other consideration which may be reserved or paid under an agreement in writing between corporations for the use and loan of money."

As stated above, the note and trust deed for the purpose of construing same, shall be construed together, and the language of the trust deed, limiting the application of the New York laws as above quoted, is an interpretation of the limits and the scope of the New York provisions of the note and trust deed to which the same is made subject.

Another thing which will be observed is that the Civil Practice Act shows that it is purely procedural as distinguished from substantive. It also appears from the reading of the acts of New York here invoked that said acts were passed for the benefit of owners of real property mortgaged in the State of New York, and applies to the foreclosure of New York trust deeds on New York property. Chapter 83 of the Laws of 1937, above referred to provides:

"The People of the State of New York, represented in Senate and Assembly, do enact as follows: . . .

"It is hereby declared that a serious public emergency affecting and threatening the welfare, comfort and safety of the people of the state [of New York]."

To the same effect is the act of 1933, which makes no reference to any emergency that may exist outside of the State of New York and we think the clear intention of the act was as above stated.

We are further of the opinion that the case of Bowman v. Price, 143 Tenn. 366, 226 S. W. 210, cited and relied upon by appellants is not authority for the contention here made by appellants. We

are of the opinion that that case as well as the case of Bank of Columbia v. Walker, 14 Lea 299, 82 Tenn. 299 and the case of Belmont v. Cornen, 48 Conn. 338, cited and relied upon by appellants do not sustain the contention of appellants. A careful reading of those cases, as we construe them, rather support the contentions made by appellees, rather than the contentions of appellants.

In the case of Colton v. Salomon, 67 N. J. L. 73, 50 A. 588, an action was brought upon a bond held by plaintiff, which bond was secured by a mortgage on land situated in New York. The defendants relied upon the statute of New Jersey, which provided that no action could be brought upon a bond until after the mortgage had been foreclosed. The New Jersey court held:

"The other objection of the defendant is also without foundation. It is deduced from the statute that requires proceedings for the collection of a debt secured by bond and mortgage to be first by foreclosure of the mortgage and sale of the mortgaged premises, and only after that by suit on the bond for deficiency. . . . . It may be that this statute applies to an assumption of such a bond, but it is quite clear that it does not apply where the mortgage is on property outside of this state, for it assumes to regulate foreclosures and sales, and this would be impossible extraterritorially. The provision that suit on the bond shall open the sale and give a new right to redeem from the mortgage could not be effectuated outside of the state, and therefore it must be that the restriction of which that provision is an incident was not intended to be imposed where the property mortgaged should be so situate."

Other cases on the subject are Ruhe v. Buck, 124 Mo. 178, 27 S. W. 412, 25 L. R. A. 178, 46 Am. St. Rep. 439, and cases cited in the footnotes thereto.

Without further elaboration upon this further question presented by these assignments of error we are of the opinion that the assignments can not be sustained and it results that they are accordingly overruled.

It follows that all assignments of error are overruled and the decree of the Chancellor is in all things affirmed. The cause will be remanded to the Chancery Court of Knox County for further proceedings in that court under the decree of that court and under the decree of this court, and also for the purpose of enforcing the continuing lien on the property involved should further defaults occur.

The costs accruing in the lower court will be paid as adjudged by the decree of the lower court. The cost of this appeal to be paid by appellants and surety on the appeal bond.

Ketchum, J., and Adams, S. J., concur.