## GUION v. NATIONAL BANK OF COMMERCE et al.—
### 218 S. W. (2d) 739.

At Jackson.   April 29, 1948.

Petition for Certiorari denied by Supreme Court, March 11, 1949.

O. W. Wells and Charles L. Neely, both of Memphis, for appellant.

Wesley Harvell and Waring, Walker & Cox, all of Memphis, for appellees.

SWEPSTON, J. The objective of complainant-appellant Oliver G. Guion by the several proceedings hereinafter described is to obtain a revocation of a trust which he set up under circumstances hereinafter appearing.

Complainant was adjudged to be *non compos mentis* in the Chancery Court of Shelby County in the year 1907 and was committed to the Western State Hospital. E. B.

Lemaster, a kinsman, later became his legal guardian and remained such until complainant's restoration to sanity.

He remained a technical inmate of the Hospital until 1937, when upon his petition to the Probate Court of Shelby County, he was released from it, although the record shows that he had been allowed to go and come almost at will. In said petition he averred that while he was capable of self control, he did not feel it advisable that his large estate be turned over to him and that it should continue under guardianship.

In 1939 he filed his petition for complete restoration to sanity. In same he averred that he was entitled to the full privileges of a sane person; that on account of his lack of experience and ability to manage intricate business matters appertaining to a large estate, he had executed an irrevocable trust to the National Bank of Commerce & Trust Company and E. B. Lemaster as trustees.

That said trust agreement had been fully explained to him and he understood that under the trust he was assured of an income of $300 per month from the net income for life; that he cannot transfer or convey any of the trust property but that he shall have the right to devise it; and that if he should fail to dispose of it by will, it shall go to the daughters of E. B. Lemaster, his guardian.

On May 9, 1939, an order was entered which, after a recital of the gist of the evidence and of the fact of execution of said trust agreement, contained the following language: "It is therefore, ordered, adjudged and decreed that the said Oliver G. Guion be and is hereby, declared of sound mind and competent to control himself and property and the guardian of said Oliver G. Guion shall terminate and he shall have a right to demand settlement of his guardian and the guardian is

hereby directed to . . . pay the balance to . . . the trustees under the irrevocable trust executed by Oliver G. Guion.''

Said trust instrument does not appear among the evidence in this record, but the substance of it appears to be as above stated with the following additional statements.

If complainant failed to receive from his mother's estate as much as $300 per month, he could call on the trustee of the trust here under consideration to make up the deficit; that in event of illness, etc., the trustee might encroach on the corpus; that if no daughters of E. B. Lemaster survived complainant and he should die intestate, the estate should pass to complainant's heirs and distributees; further that the Bank as trustee should receive compensation but not E. B. Lemaster.

The trustees took over the trust estate and its management.

On November 13, 1943, complainant filed a petition in the Probate Court to have the trust terminated. He averred that he was receiving as much as $300 per month from his mother's estate and, therefore, no benefit from this trust of his estate coming from his grandfather; that said trust was illegal for the reason that (1) it was signed before the removal of his disability and (2) there can be no trust with the maker beneficiary holding the power of disposal, and that he had made a will disposing of it.

The Probate Court dismissed the petition for want of jurisdiction of the subject matter.

On January 7, 1944, he filed an original bill in Chancery alleging that the Probate Court would not and did not remove his disability until he had signed the trust agreement and that he signed it in order to obtain removal

of disability; that the trust is not binding and not irrevocable; that the daughters of E. B. Lemaster have no interest or title; and that same should be revoked.

On April 10, 1944, after a hearing on oral testimony, a decree was entered to the effect that:

(1) The Probate Court would not have removed the disability, unless the trust had been executed;

(2) Complainant's mental condition was the same as on May 9, 1939 and his condition and experience was not such as to make him competent to handle more than the $300 per month he was receiving.

(3) That the interest of the trustees was not such as to be a valid objection to the revocation.

(4) That subject to approval by the Court the interest of the daughters of E. B. Lemaster has been eliminated by a contract.

(5) That the original bill was drawn on the theory of complete revocation instead of modification.

(6) The bill was dismissed without prejudice to complainant's right at any time hereafter to seek a modification of said trust in any court of competent jurisdiction and, further permitting him to file within thirty days hereof an amended and supplemental bill herein seeking a modification.

Within thirty days, to wit, April 10, 1944, a supplemental bill was filed again setting out the contract with the daughters of E. B. Lemaster and bringing in as defendants complainant's sister and her daughter individually and as a class representing the heirs and distributees. The relief sought was revocation; approval of the contract with the daughters of E. B. Lemaster; modification to give complainant the income from the trust.

On May 4, 1944, a decree was entered (1) approving the settlement eliminating the daughters of E. B. Lemaster, (2) giving complainant the entire net income from the trust and (3) retaining the cause in court "for the purpose of allowing the complainant to again apply to this Court for such relief as he may be entitled and for any other purpose which may arise in the administration of said trust."

No appeal was then prayed and no bill of exceptions was taken.

Here the matter rested until September 28, 1945, when a "supplemental" bill was filed setting out the proceeding above shown and as new matter that (1) for more than a year he has been successfully and prudently managing his income and is now fully capable to do so and (2) no other person has any interest in his estate.

He prayed for a revocation of the trust.

On February 7, 1946, an order for a medical examination of complainant as to his mental condition was entered.

On May 8, 1947, a hearing on oral testimony was had and the evidence is preserved by bill of exceptions.

On May 23, 1947 a final decree was entered in which the Court decreed that (1) its former decrees of April 10, and May 4, 1944, were final and no appeal taken therefrom, (2) the latter decree only permitted a relitigation of matters therein involved only insofar as subsequent events or subsequent change of condition of the complainant might warrant a change in said decree, (3) since said former decrees complainant's mental condition has not changed and that he has the mental capacity of a child at the age of twelve years (4) said bill be dismissed with prejudice.

The appellant assigns error as follows:

"I. The Court erred in failing to grant the relief sought by the complainant.

"II. The Court erred in holding that the decree of the Probate Court of Shelby County in Book 170, Page 411, was not a complete restoration under Section 9656 of the Code.

"(a) Under Section 9656 of the Code, the Probate Court was the only court with jurisdiction to declare one of sound mind.

"III. The action of the Court was a judicial holding usurping and taking from the complainant the right of trial by jury in lunacy cases.

"IV. The Court erred in failing to hold that the trust agreement was not entirely cancelled.

"(a) If Guion did not have the mentality, or if the decree in Minute Book 170, page 411, of the Probate Court, did not restore his rights, the trust agreement was void, and the Bank would be estopped from trying to hold the trust agreement to be good.

"V. The Court erred in excluding the testimony of witnesses as to any act or condition of Guion prior to May 4, 1944.

"VI. The Court erred in excluding the order of the Probate Court entered in 1946, which is shown as Exhibit-Page 332F."

We cannot intelligently attempt to pass upon the principal assignments of error without first determining a matter not assigned as error. That is, the extent of our review depends upon whether the decrees of April 10, and May 4, 1944, were interlocutory or final.

The only prayer for appeal and order allowing same is that of June 13, 1947, R. 88. This order allows an

appeal from the decree rendered "at the present term and from all former decrees."

The only basis on which this allowance as to all former decrees could be effective would be that they were interlocutory. A broad appeal from a final decree brings up the whole case, including all interlocutory orders and decrees, for review.

Fox v. River Heights, Inc., 22 Tenn. App. 166, 118 S. W. (2d) 1104.

Likewise on a discretionary appeal in equity under Code Section 9038. Vaccaro v. Cicalla, 89 Tenn. 63, 14 S. W. 43.

The appeal, however, must be perfected within the time allowed by Code Section 9047.

Now if the two above mentioned decrees were interlocutory, we may review them for error, although the Chancellor had no power to review them except within the term and within thirty days of their rendition insofar as they determined rights and adjudged principles. Vaccaro v. Cicalla, supra.

And cases cited under Code Section 8829.

If not interlocutory but final, they are not now subject to review, because the appeal from those two former decrees came too late.

In Caldwell v. Hodsden's Heirs, 69 Tenn. 45, referred to in Fox v. River Heights, Inc., supra, an appeal was granted against an order for further directions, after the time for appeal from the final decree had expired, "from all decrees and orders made in this cause heretofore."

The Court held that this did not bring up the decree on which the order was founded. "An appeal, this court has said, only annuls and vacates, and, of course, only brings up such orders, judgments, or decrees as, in legal

contemplation, are appealed from, leaving all other orders in full force. Gilchrist v. Cannon, [41 Tenn. 581, 590], 1 Cold. 581, 590. . . .''

Accordingly, although the Chancellor's order in the instant cause incorporated those former decrees in the matters appealed from, it was ineffective in legal contemplation as to them if they were in fact final decrees, as he indeed held them to be.

Code Section 8829 provides that ''A judgment or decree may be interlocutory or final, to be determined by the subject-matter and substantial purport thereof.''

Gibson, Section 576 describes and defines a final decree. Admitting the difficulty that frequently exists in deciding whether a decree is final or interlocutory, we think the factual situation in Hicks v. Hicks, 26 Tenn. App., 641, 176 S. W. (2d) 371, 374, is substantially analogous to that of the instant suit and that the principles applied there are applicable here.

A petition was filed by the father to change a decree awarding custody of the child to the mother who had been granted a divorce a year or so previously.

The cause was retained in court by virtue of Code Section 8454 by which decrees for support and custody remain in control of the court and are ''subject to such changes or modification as the exigencies of the case may require.''

The question was whether the decree was *res adjudicata* as to facts found at the time of the decree.

The Court held it to be so and confined the hearing to facts arising since the decree that would tend to establish a change of conditions that would warrant a new decree as to custody.

The Court said: ''It is true the doctrine of *res adjudicata* applies only to final judgments or decrees. But

we think the former decree in the case before us was a final decree within the meaning of this doctrine. It was final in the sense that it left no issue undetermined, decided all matters, disposed of the whole merits of the case, and determined the custody of the child upon the facts then existing. It was also final in the sense that, . . . . it was appealable as a matter of right. . . . "

Referring back to the abstract of the bills and decrees the instant cause the analogy becomes obvious.

The Chancellor disposed of the whole matter then before him but owing to the possibility of a change in the condition of the complainant he left the cause open for future hearings on necessarily new facts. This is the view he announced at the beginning of the last hearing. Complainant could have appealed as a matter of right at the time of the former decrees. His failure so to do leaves us no discretion and we are without jurisdiction to review any of the hearings, even on the technical record, except the last.

■ Therefore, holding as we do that the decrees of April 10, and May 4, 1944 were final decrees unappealed from the action there reflected became the law and fact of the cause, irrespective of whether we agree or not with the action of the Chancellor in all respects, leaving open for our review only the errors assigned to the action of the court during the last hearing and decree of May 23, 1947.

We, therefore, find it necessary to overrule Assignments II, III and VI.

■ Assignment V is overruled for the reasons set out in Hicks v. Hicks, supra. We think the Chancellor properly limited the last hearing substantially to com-

plainant's change of condition, if any, since May 4, 1944.

There remains only Assignment I.

The Chancellor had by the prior decrees modified, or partially revoked the trust agreement to the extent of allowing complainant to demand and receive all of the net income from his estate. The object of the last bill was to remove the trust entirely and have his estate turned over to him.

█ The burden rested upon complainant to show a change of condition in his competency and ability since May 4, 1944.

It was shown that since mid-1944 he has been economical and has saved about $21,000 out of about $27,000 and has invested the same from time to time in United States bonds.

Several witnesses including some doctors testified that he is capable of managing his own affairs.

But most of his own witnesses saw no change in his condition since 1944. Dr. David Galloway, Dr. J. B. Stanfill, and Gilmer Richardson, Albert Woolridge, and Warren B. Jordan.

Mr. Guion was examined by Doctors McCool and Adler in the summer of 1946 at the instance of defendants under court order. Dr. McCool testified that he had not improved and was not capable of improving.

The Chancellor heard and saw Guion testify. He made a very poor witness in his own behalf.

█ We have read the record carefully. We conclude that the decided weight of the evidence supports the Chancellor's finding that complainant's mental condition has not changed since May 4, 1944.

█ Even if some substantial change had been shown we should still have this to consider. Assuming, but not

deciding that the Chancellor had the power to thus revoke the trust, as he inferentially held he had, we think under the facts of this record his exercise of the power was a matter resting in his discretion and that we should reverse only if an abuse of discretion is shown.

In Stier v. Nashville Trust Co., 6 Cir., 158 F. 601, there was a devise to a trustee to manage the estate until the son became thirty, he being twenty-three years of age at the execution of the father's will; in the meantime, the income was to be paid to the son. There was no restraint or alienation by the son, nor any limitation over in event he should not live to age thirty.

The son assigned his interest in both the corpus and the income. The suit was filed by the assignee, Stier, when the son was twenty-seven, to require the trustee to turn over the income and corpus to Stier.

Held, that although the court under these facts had the discretion to terminate the trust, it did not abuse its discretion in refusing to do so.

All assignments are accordingly overruled, the decree of the Chancellor is affirmed and the costs are assessed against the complainant.

Baptist, P. J., and Adams, Special J., concur.