**CULLUM & MAXEY CAMPING CENTER, INC., Plaintiff-Appellant,**

v.

**Leonard Harris ADAMS, Ann E. Adams, and Clytie L. Adams, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section at Nashville.

July 1, 1982.

Application for Permission to Appeal Denied by Supreme Court Oct. 4, 1982.

Helen Spikas Rogers, Nashville, for plaintiff-appellant.

W.B. Hogan, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

In January, 1981, plaintiff-appellant filed its complaint in the Chancery Court for Davidson County, Tennessee, against defendants-appellees Leonard Adams, his wife Ann E. Adams, and Clytie L. Adams, the mother of Leonard Adams. The complaint alleged that on October 14, 1980, plaintiff was awarded a judgment by default against defendants in the General Sessions Court of Davidson County in the amount of $4,785.02; that defendants knew of the General Sessions Court hearing "having been properly served with a warrant by the Davidson County Sheriff and knew a default had been taken upon receipt of a letter from plaintiff's attorney, dated October 24, 1980;" that defendant, while knowing of the General Sessions judgment, did on October 31, 1980, convey to defendant Clytie Adams by quitclaim deed certain real property; that this conveyance was fraudulent and "with the intent and purpose to delay, hinder and defraud the plaintiff, a judgment creditor of defendant, and to prevent the execution of the judgment." Plaintiff prayed that the conveyance be set aside; that plaintiff be awarded a judgment against defendants Leonard and Ann Adams and that the property be sold to satisfy the judgment.

Subsequently, defendants Leonard and Ann Adams filed a complaint in the Chancery Court against plaintiff wherein they alleged that they had been advised that plaintiff had filed the complaint against them. They further alleged that they had no knowledge of the General Sessions judgment; that they had never been served with any papers from the General Sessions Court; and further, that on the day the General Sessions warrant was alleged to have been served on them, they were in Waco, Texas. They prayed that plaintiff be enjoined from proceeding further with its suit against them and that the judgment obtained in the General Sessions Court be declared null and void.

On May 8, 1981, a motion to consolidate the cases was granted. Various motions and pleadings were filed. On November 18, 1981, the cause came on to be heard before the Chancellor without the intervention of a jury.

On November 20, 1981, the Chancellor filed his Memorandum Opinion in which he found that the conveyance from defendants to Clytie Adams was fraudulent and was made for the purpose of hindering, delaying or defrauding the creditors of defendants; that defendants had "carried the burden necessary to void the [Sheriff's] return" on the General Sessions warrant; and that

plaintiff had failed to carry the burden of showing that the property disposed of by plaintiff was done so in a "commercially reasonable" manner.

The pertinent facts are as follows: Defendants purchased from plaintiff, on May 10, 1978, a used motor home for the cash price of $23,551.90. Defendants made a down payment of $4,001.90, leaving a balance of $19,550 to be financed. The Third National Bank financed the deferred payment price of $34,499.90. Subsequently, defendants defaulted in their payments. When defendants did not meet the September, 1980, payment, an employee of the installment loan department of Third National Bank made an investigation, finding that a Robert Gann had the motor home at the Rivergate Body Shop and that Gann wanted the loan transferred to his name. This employee contacted the vice-president of plaintiff company, informing him that Mr. Gann wanted to purchase the motor home and have it transferred to his name. Although the transfer papers were completed and left at plaintiff's dealership, Mr. Gann never executed the papers for completion of the transfer. Defendant Leonard Adams did sign the transfer papers relinquishing title to the motor home so it could be transferred to Mr. Gann.

In December, 1979, the Third National employee called Mr. Gann and told him to drive the motor home over to plaintiff's dealership or that she would have someone pick it up, that the payments were too far past due and Third National couldn't carry it any longer. Mr. Gann informed her that the motor home had been returned to plaintiff's lot on the 24th of December.

Plaintiff's first issue on appeal is whether defendants presented sufficient proof to void the Sheriff's return on service of process.

"In this jurisdiction, as well as elsewhere, it has been recognized that a suit in equity may be prosecuted to secure relief against a decree or judgment rendered by a court which did not have jurisdiction of the person of the complaining party affected by it. It was so held first in *Carruthers v. Hartsfield,* 11 Tenn. (3 Yeager), 366. The conclusiveness which is accorded the return, showing service of process, in the suit in which such judgment or decree is rendered demands a remedy in equity, and the early holding to that effect in *Ridgeway v. Bank,* 30 Tenn. (11 Humph.), 522 is quoted in Freeman on Judgments (5 ed.), Section 1229, page 2558, as an 'obvious and conclusive answer' to argument to the contrary." *Rule v. Bell,* 617 S.W.2d 885, 886–87 (Tenn. 1981) (*quoting Myers v. Wolf,* 162 Tenn. 42, 34 S.W.2d 201 (1931)).

In the instant case defendants properly filed their complaint attacking the jurisdiction of the General Sessions Court.

Plaintiff correctly contends that it is "well settled that the officer's return is regarded in law as the best evidence of the fact it states, and that the oath of an interested party is not sufficient in law to overcome such return." *Royal Clothing Co. v. Holloway,* 208 Tenn. 572, 574–75, 347 S.W.2d 491, 492 (1961).

In *Brake v. Kelly,* 189 Tenn. 612, 620, 226 S.W.2d 1008, 1011 (1950), the Court stated as follows:

It seems to necessarily follow from that which has been said that the unsupported testimony of the three defendants in the Circuit Court case, each testifying as to himself or herself alone is insufficient to overcome the presumption of verity of the return of the officer and the testimony of that officer that he did serve the process, and that the Chancellor was correct in so holding. The rule is based on a very sound public policy. Were it otherwise "the verity of judicial records would be of little value."

In support of defendants' testimony, Leonard Adams, a long-haul truck driver, introduced his log book which he is required by the Interstate Commerce Commission to keep. The log book is a contemporaneous written record of the dates and places traveled and hours driven by Adams in his work as a long-haul truck driver. Adams' log book shows that he left Nashville on Sep-

tember 7, 1980, that he stopped in North Little Rock, Arkansas, on September 7, 1980. A "sales slip" was introduced showing that fuel was purchased at the Jackpot Fuel Stop in North Little Rock on September 7. The log book shows that Adams arrived in Texarkana, Texas, at 9:00 P.M. on September 7, 1980; that he left there at 5:00 A.M. on September 8, 1980; and that he traveled to Waco, Texas, where, on September 8, the "transmission went out of the truck." His log book shows that he spent four days in Waco, Texas, leaving there on September 13 and traveling to San Antonio, Texas, where he spent the night, leaving San Antonio on September 13 and arrived in Laredo, Texas on September 14, 1980.

The log book shows that his truck broke down on September 8, 1980, a Sunday. Defendants "checked into the Best for Less Motel" next door to the International Harvester garage and, on Monday, made arrangements for International Harvester to repair the truck. The defendants' credit card receipts show that on September 12, 1980, a payment of $115.02 was made to the Best for Less Motel in Waco, Texas. The testimony of Mrs. Martha Bernard, Supervisor in the "Open End Master Charge, Visa Credit Department," First American Bank, was that while a transaction date for the San Antonio Inn in San Antonio, Texas, showed September 11, 1980, at the request of Adams' attorney, she ordered a copy of the San Antonio Inn transaction from "Interbank" and that this showed an actual transaction date of September 13, 1980.

We are of the opinion that the log book, credit card receipts, and truck repair bill, along with the testimony of Mrs. Bernard, is sufficient to corroborate the Adams' testimony that they were not present in Nashville on September 12, 1980, and therefore were not served with process. This is especially true in view of the equivocating testimony of the Deputy Sheriff who allegedly served the process.

The record fully supports the Chancellor's finding that defendants' testimony was fully supported by corroborating documents and a disinterested witness, the officer's return to the contrary. This issue is without merit.

The next issue is:

Whether Plaintiff sustained the burden of showing a commercially reasonable sale in the lawsuit based on alternative Count II of the Amended Complaint for the original amount of the deficiency on the repossessed motor home.

T.C.A. § 47–9–504(3) provides that collateral may be disposed of either by public or private proceedings and that the "sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable."

■ The burden of proving that the foreclosure sale was commercially reasonable is upon the plaintiff Cullum and Maxey Camping Center, Inc. *Investors Acceptance Company of Livingston, Inc. v. James Talcott, Inc.,* 61 Tenn.App. 307, 454 S.W.2d 130 (1969).

■ We find no evidence in this record that the sale was commercially reasonable. The only evidence in regard to the sale is contained in the testimony of Ms. Faye Tucker in the Installment Loan Department of Third National Bank. She testified that once the motor home was returned to Cullum and Maxey, "we set it up as a repossession, and sent out a ten-day notice and the notice of private sale, or public sale, to the customer," that the notice was sent to Mr. and Mrs. Adams and subsequent to that notice, Cullum and Maxey purchased the motor home and there was a deficiency of $3,580.20. We find no other evidence in the record regarding the sale. Plaintiff has failed to carry its burden of showing that the sale was commercially reasonable. This issue is without merit.

By its third issue, plaintiff contends that "[d]efendant should have been assessed the costs of this cause, including reasonable attorney's fees and punitive damages."

Plaintiff alleges that defendants' conveyance of certain real property to defendant

Clytie Adams was fraudulent. The Chancellor found that the conveyance "was fraudulent and for the purpose of hindering, delaying or defrauding the creditors [of Leonard and Ann Adams]." However, the Chancellor did not set aside the conveyance.

Plaintiff insists that since the Chancellor found that the conveyance was fraudulent, it is entitled to attorneys fees and punitive damages.

■ In this case the Chancellor correctly dismissed plaintiff's suit since plaintiff was not entitled to recover under its General Sessions judgment because of defective service of process. Plaintiff was not entitled to recover under its alternative count because plaintiff had failed to carry its burden of showing that the sale was "commercially reasonable." In the absence of a finding that plaintiff is entitled to actual damages, plaintiff cannot recover punitive damages. "[A]ctual damages must be found as a predicate for the recovery of exemplary damages." *Allen v. Melton,* 20 Tenn.App. 387, 397, 99 S.W.2d 219, 225 (1936).

■ As we have said, while the Chancellor did find that the conveyance from defendants to Clytie Adams was fraudulent, he did not set it aside. Under the facts of the instant case, to have set aside the conveyance would have availed plaintiff nothing. Defendants are not, under the facts of this case, creditors of the plaintiff. Plaintiff was not entitled to a judgment against defendants. Since the conveyance was not set aside, there was no common fund out of which to reimburse plaintiff for its expense in prosecuting the suit.

"[A]ttorneys fees cannot be awarded to litigants when there is no property or funds before the court which have been protected or preserved out of which attorneys fees can be paid." (Citations omitted.) *French v. Appalachian Electric Cooperative,* 580 S.W.2d 565, 571 (Tenn.App.1978).

This issue is without merit.

We have considered appellees' issues that the Chancellor erred in failing to grant their motion for summary judgment and that the Chancellor erred in failing to grant their motions to dismiss at the conclusion of plaintiff's proof and at the conclusion of all the proof and find them to be without merit.

"A summary judgment can be granted only when the pleadings, stipulations, and affidavits, if any, 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Phillips v. Pittsburgh Consolidated Coal Co.,* 541 S.W.2d 411, 413 (Tenn.1976). *See,* TRCP, 56.03.

Defendants did file affidavits in support of their motion for summary judgment to show that they were not in Nashville on the date the civil warrant was served. However, the plaintiff had filed as exhibit A to its complaint a copy of the civil warrant which contained the affidavit of the deputy sheriff showing service of process upon the defendants. There were, therefore, affidavits and counter-affidavits on the same point.

From the affidavits filed, there was a dispute as to material determinative evidence. The Chancellor was correct in overruling defendants' motion for summary judgment.

We are also of the opinion that the Chancellor correctly refused to grant defendants' motions to dismiss at the conclusion of plaintiff's proof and at the conclusion of all the proof. Plaintiff made a sufficient showing, and the Chancellor found, that the "conveyance was fraudulent and for the purpose of hindering, delaying and defrauding the creditors."

The judgment of the Chancellor is affirmed with costs to plaintiff and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

CANTRELL and CONNER, JJ., concur.